UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARION PRICE, et al.,

    Plaintiffs,

v.

THE CITY OF SEATTLE, et al.,

    Defendants.

No. C03-1365P

ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION TO DISMISS CLASS LIABILITY CLAIMS

    This matter comes before the Court on Plaintiffs' Motion for Partial Summary Judgment on Conversion Claim, (Dkt. No. 120), and Defendant the City of Seattle's ("the City") Motion to Dismiss Class Liability Claims, (Dkt. No. 123). Having reviewed the pleadings and supporting documents, and having heard oral argument by the parties, the Court hereby MODIFIES the class definition, GRANTS Plaintiffs' motion, and DENIES the City's motion.

    For the reasons outlined below, the class is redefined to include "all registered owners of motor vehicles impounded by the City solely for driving while a license is suspended or revoked from March 20, 2000 through December 27, 2002." This excludes registered owners of motor vehicles impounded by the City for driving while a license is suspended or revoked ("DWLS") <u>and</u> other impoundable offenses.

    The Court grants Plaintiff's motion. The City's DWLS impound policy did not allow officers to exercise the necessary discretion to consider the availability of reasonable alternatives to impound.

ORDER - 1

It was effectively a mandatory impound policy with limited exceptions.  The City does not present sufficient evidence to show a genuine issue of fact on this question.  A policy barring consideration of reasonable alternatives to impound is unlawful.  Impounds carried out pursuant to such an unlawful policy constitute conversion.  Contrary to the City's contention that Plaintiffs cannot show causation on a class-wide basis, causation is shown by the fact that all cars impounded solely for DWLS violations were necessarily impounded pursuant to an unlawful policy.  Post hoc rationalizations that each of the impounds would have been reasonable under the circumstances does not save the City from summary judgment.

The Court denies the City's motion.  The key issue in Plaintiffs' impound related claims is the nature of the City's policy and whether that policy was unlawful, not whether each impound for a class member's car was reasonable under the circumstances.  Similarly, the key issue in Plaintiffs' due process post-impound hearing claim is the nature of the hearing that was available as a rule, not whether each class member demanded a hearing in which to argue that the impound policy was unlawful.  Both are issues that are appropriate for class treatment.

## BACKGROUND

According to Plaintiffs, the City implemented a policy since at least 1999, called "Operation Impound," whereby it required police officers to impound every vehicle after its driver was pulled over and it was discovered that the driver had a suspended license regardless of the circumstances and whether there were reasonable alternatives to impoundment.  The policy, according to Plaintiffs, did not allow police officers the discretion to determine whether there were reasonable alternatives to impound.  The City denies these allegations and contends that officers did have discretion in determining whether to impound such cars.

Plaintiffs filed suit alleging conversion, negligent, reckless, and wanton misconduct, unjust enrichment, and violations of state statue, the Washington Constitution, and the Fourth and Fourteenth

ORDER - 2

1  Amendments. The Court certified a damages class of "all registered owners of motor vehicles
2  impounded by the City for DWLS violations from March 20, 2000 through December 27, 2002."
3      Plaintiffs now move for summary judgment on their conversion claim. The City moves to
4  decertify the class and dismiss the class claims.

5  ANALYSIS

6      Summary judgment is not warranted if a material issue of fact exists for trial. <u>Warren v. City
7  of Carlsbad</u>, 58 F.3d 439, 441 (9th Cir. 1995), <u>cert. denied</u>, 516 U.S. 1171 (1996). The underlying
8  facts are viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Indus.
9  Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). "Summary judgment will not lie if . . . the
10 evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v.
11 Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The party moving for summary judgment has the
12 burden to show initially the absence of a genuine issue concerning any material fact. <u>Adickes v. S.H.
13 Kress & Co.</u>, 398 U.S. 144, 159 (1970). However, once the moving party has met its initial burden,
14 the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an
15 element essential to that party's case, and on which that party will bear the burden of proof at trial.
16 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-24 (1986). To discharge this burden, the nonmoving
17 party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue
18 for trial. <u>Id.</u> at 324. "The mere existence of a scintilla of evidence in support of the [non-moving
19 party's] position will be insufficient; there must be evidence on which the jury could reasonably find
20 for the [non-moving party]." <u>Anderson</u>, 477 U.S. at 252.

21 <u>I. Plaintiffs' Motion</u>

22     The tort of conversion is the willful and unlawful interference with a person's use or
23 possession of his property. <u>Judkins v. Sadler-Mac Neil</u>, 61 Wn.2d 1, 3, 376 P.2d 837 (1962);
24 <u>Demelash v. Ross Stores, Inc.</u>, 105 Wn.App. 508, 522, 20 P.3d 447 (2001). Contrary to the City's
25 contention otherwise, conversion need not involve a permanent deprivation of property; it includes

ORDER - 3

temporary deprivations. Id. If a municipality impounds a car pursuant to a policy that has been deemed unlawful, the impound constitutes a conversion. Boss v. City of Spokane, 63 Wn.2d 305, 307, 387 P.2d 67 (1963) (impound pursuant to a police department policy that exceeded a city ordinance amounted to a conversion).

For a vehicle impound to be lawful under Article I, § 7 of the Washington Constitution, the impound must be reasonable. It is unreasonable to impound a vehicle if there is no probable cause and "where a reasonable alternative to impoundment exists." State v. Houser, 95 Wn.2d 143, 153, 622 P.2d 1218 (1980); State v. Hill, 68 Wn.App. 300, 306, 842 P.2d 996 (1993) ("In Washington, impoundment is inappropriate when reasonable alternatives exist."); State v. Coss, 87 Wn.App. 891, 898, 943 P.2d 1126 (1997). This principle underlies the Supreme Court's decision in All Around Underground. The central focus in All Around Underground was RCW 46.55.113, which provided that when a driver is arrested for a DWLS violation, the vehicle is subject to impound, pursuant to applicable local ordinance, at the direction of a law enforcement officer. The Supreme Court interpreted this statute as merely granting discretionary authority to impound for DWLS violations but not mandating impounds for DWLS violations. 148 Wn.2d at 154-55. Without passing judgment on the constitutionality of RCW 46.55.113, the Court noted that grants of discretionary impound authority have been found constitutional before, and in fact the constitution requires the officers consider reasonable alternatives to impound, which necessarily relies on the officer exercising discretion. Id. at 155 and n.8.

Here, the evidence outlined below shows that the City's DWLS impound policy instructed Seattle Police Department ("SPD") officers to impound all cars involved in DWLS violations. While the policy provided for limited exceptions (i.e. safety and/or officer being called away on emergency), those exceptions did not include the consideration of reasonable alternatives to impoundment. Similarly, while some officers may not have followed the policy, that does not negate the mandatory

ORDER - 4

nature of the policy. In effect, the City had a mandatory impound policy allowing for limited exceptions.

Plaintiffs present evidence from Seattle Police Department ("SPD") that shows the mandatory nature of the DWLS impound policy. First, SPD's Operation Impound officer training documents instructed officers to impound cars involved in DWLS violations in all circumstances unless extreme circumstances justify not impounding, such as when the officer is called away on a pressing emergency or when impoundment would put either the officer or the passengers in danger. (Berger Decl., Ex. 10 ("Not impounding the vehicle of a suspended driver is like not arresting a DWI suspect. This can only be done on those rare occasions when extreme circumstances justify it."), Ex. 11, Ex. 12 ("Even if the registered owner was a passenger with a valid operator's license and stated they were unaware that the driver was DWLS, the vehicle may be impounded.")).

Second, SPD's policy on impoundments generally required the officer to consider reasonable alternatives to impoundment as a basis for not impounding the car. (Id., Ex. 14 ("A vehicle should be impounded only after all other reasonable alternative dispositions have been eliminated.")). SPD's "Training Topic" on DWLS impounds specifically distinguished the procedures for DWLS impounds from the procedures for impounds generally. (Id., Ex. 12 ("The purpose of this Training Topic is to explain the procedure for citing, booking, and impounding vehicles driven by DWLS [] violators. For information on other types of impounds, read Department Policy and Procedure Manual Section 2.089 on Impounding Vehicles [SPD's policy on impoundments generally, cited above].").

Third, in SPD records in individual DWLS cases from July, August, and September 1999, SPD's Lt. Getchman in charge of Operation Impound informed officers that all cars involved in DWLS violations must be impounded and requested an explanation as to why those particular cars were not impounded. (Id., Ex. 4).

Fourth, in an SPD memorandum to officers detailing the number of DWLS citations and impounds for 2000 and 2001, Lt. Getchman indicated that "SPD would prefer 100% impoundment;

ORDER - 5

however discretion may be used for reasons of safety or when otherwise advisable."  (Id., Ex. 15).  The memo noted that approximately 4% of all DWLS citations did not result in a vehicle impound.  Plaintiffs point out that most of these were due to auto theft, accident, the car was a rental car or used for a business, the officer was called away from the scene, or the officer felt compassion for the driver and/or passengers.

Plaintiffs also present evidence from the City.  In various individual impound appeals, Lt. Getchman, the officer in charge of the Operation Impound program, stated unequivocally in an affidavit that officers were instructed to impound all vehicles driven by DWLS violators (except in cases where the officer was called away to handle an emergency situation).  (Id. Ex. 2 ("[O]fficers were instructed that impoundment of a vehicle driven by a person with a suspended driver's license is required in all cases and is not optional with the officer.") (emphasis added)), Ex. 3).  Other officers testified in other individual impound appeals that SPD's policy was to require impound in all cases without considering the availability of reasonable alternatives.  (Id., Ex. 5).  After the Washington Supreme Court issued its decision in All Around Underground, the City's attorney wrote an internal email on the decision stating that the Supreme Court's ruling would apply to the City's ordinance because it was identical to the one struck down in All Around Underground.  (Id., Ex. 19).

At oral argument, the City claimed that these affidavits and testimony from the individual impound appeals should be discounted on the ground that the City's defense is now different; counsel claimed that the City was defending against potential equal protection claims in these prior cases, whereas now it is defending against a class action conversion claim (as well as state and federal constitutional claims.   While the City may certainly change its legal defenses according to the claim brought against it, it cannot change the facts.  The City's representatives testified under oath to municipal and superior court judges that the policy was mandatory.

Using a different tactic, the City attempts to counter with evidence that it claims shows that the City's impound policy allowed officers to exercise discretion in deciding whether to impound cars

ORDER - 6

involved in DWLS violations. This evidence, however, is not sufficient to show that there is a genuine issue of fact as to the nature of the City's DWLS impound policy. First, two SPD officers state in declarations that they do not believe that the City ever had a mandatory impound policy and that based on their training, they were to use discretion in determining whether impound was warranted, including considering whether there were any alternatives to impoundment. (Hughey Decl., ¶ 6, Ornelas Decl., ¶ 10). Two officers' individual beliefs do not refute the existence of a policy that the City and SPD consistently asserted required mandatory impounds.[1] Second, SPD Chief of Police R. Gil Kerlikowske states in a declaration that the SPD did not have a policy requiring mandatory impounds of cars driven by DWLS violators and that officers were trained to use their discretion in determining whether to impound. (Dkt. No. 75, Ex. 39; see also Berger Decl., Ex. 18 (Kerlikowske Dep.)). Chief Kerlikowske's statements do not indicate that officers were trained to consider the availability of reasonable alternative to impound as a reason to decline to impound for a DWLS violation.

Third, the City points to deposition testimony by Lt. Getchman, but his testimony contradicts his prior unequivocal affidavit. "[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." <u>Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 266 (9th Cir. 1991). This same logic applies when the witness first testifies via affidavit, but later testifies to the contrary in deposition. Lt. Getchman's deposition was taken November 2, 2004 -- well after this litigation was underway and the salient issues became clear to the parties. He stated that SPD was not trying to impound 100% of the cars, but then he was asked if he ever told officers that SPD would prefer 100% impound to which he responded that he had. (Buck Decl., Ex. 1 (Getchman Dep.) at 38). Lt. Getchman was asked if officers were instructed not to impound if a licensed driver was available, to which he answered that he did not know if they were instructed but he understood that officers had

---

[1] Additionally, as Plaintiffs note in their reply, the City does not provide any documentation to support these officers' statements about the training they received or the City's written policies.

ORDER - 7

discretion and would use it as necessary depending on the situation. (Id. at 41-42). Similarly, he was asked if officers were instructed not to impound if the car could be legally parked at the scene, to which he responded that officers perhaps had the option to leave the car parked but he could not point to any written material to show that this was part of the City's DWLS impound policy. (Id. at 42-43). To the extent that Lt. Getchman asserts in his deposition that SPD's policy was to allow officers to exercise discretion, that assertion directly contradicts his prior affidavit that impoundment for DWLS violations was not optional with the officers. Thus, this deposition testimony is not sufficient to survive summary judgment.

The City argues unpersuasively that reasonableness can be determined only by looking at the facts and circumstances of each individual case. As support, the City points to the various impounds of cars driven by named Plaintiff Allen R. Nunnery, in which two officers state that they each exercised discretion in deciding whether to impound Mr. Nunnery's car, including considering whether there were any reasonable alternatives to impoundment, and concluded based on the circumstances that impound was appropriate.[2] It is true that "[t]he reasonableness of a particular impoundment must be determined from the facts of each case." Coss, 87 Wn.App. at 898; see also All Around Underground, 148 Wn.2d at 150 n.3. However, it is illogical to inquire into the reasonableness of the impounds done pursuant to the City's DWLS impound policy when that policy barred the officer from making such an inquiry. Regardless of whether the officers would have found any particular DWLS impound reasonable because of a lack of reasonable alternatives, the City's policy was that the officer should impound in all circumstances (unless called away on another emergency or the impound presented a safety risk to the passengers). The City maintains that the officer's subjective understanding is not controlling, but rather the objective facts determine the reasonableness of the impound. As such, according to the City, post hoc determinations are acceptable in determining reasonableness. Under

---

[2] Officer Hughey decided not to impound Mr. Nunnery's car in a later encounter, but this occurred in May, 2003, which was after the All Around Underground decision came out.

ORDER - 8

the City's theory, the City's policy would be irrelevant. That argument was rejected in <u>All Around Underground</u>. The Supreme Court noted that the district court found in a post hoc fashion that the impound at issue was reasonable and therefore compliant with the constitutional requirement to exercise discretion. 148 Wn.2d at 150 n.2. The Supreme Court rejected that finding because it was based on faulty logic. Because the state patrol regulation at issue divested officers from exercising discretion, the officer "cannot have reasonably exercised discretion he did not have." <u>Id.</u> Thus, it is illogical to justify impounds based on a post hoc reasonableness determination if the policy authorizing the impound barred the officer from considering the reasonableness at the time. Because the City's policy barred the officers from considering the availability of reasonable alternatives to impound, the reasonableness of each of the impounds at issue has no bearing on whether the City impounded these cars pursuant to an unlawful policy.

Lastly, the City's causation argument is not persuasive. Plaintiffs conceded at oral argument that it may be appropriate to redefine the class to include only owners of cars that were impounded solely for DWLS violations. By redefining the class as such, all of the cars impounded that fall within the class were necessarily impounded pursuant to the City's DWLS impound policy. Therefore, individual inquiries into the cause of the impound are not necessary.

In sum, the City's DWLS impound policy unlawfully precluded officers from considering the availability of reasonable alternatives when determining whether to impound a car driven by a DWLS violator. Because SPD officers impounded cars driven by DWLS violators pursuant to an unlawful policy, the City is liable for conversion.

<u>II.  The City's Motion</u>

The City argues that the class must be decertified because the lawfulness of each of the impounds at issue depends of whether each impound was reasonable in light of the particular circumstances of each case and that this is a fact-specific determination inappropriate for class

ORDER - 9

treatment. Similarly, the City argues that the lawfulness under due process requirements of the post-impound hearings is a fact-specific determination inappropriate for class treatment.

The City fails to present new evidence or new legal authority to justify bringing a motion on issues that the Court has addressed on previous occasions. Further, the analysis above effectively resolves the City's motion. Class treatment is appropriate because the core issue in this case is the nature of the City's DWLS impound policy and its post-impound hearing procedure.

## CONCLUSION

The Court MODIFIES the class definition to include "all registered owners of motor vehicles impounded by the City solely for driving while a license is suspended or revoked from March 20, 2000 through December 27, 2002." This excludes registered owners of motor vehicles impounded by the City for DWLS violations and other impoundable offenses.

The Court GRANTS Plaintiff's motion. The City's DWLS impound policy did not allow officers to exercise the necessary discretion to consider the availability of reasonable alternatives to impound. It was effectively a mandatory impound policy with limited exceptions. The City does not present sufficient evidence to show a genuine issue of fact on this question. A policy barring consideration of reasonable alternatives to impound is unlawful. Impounds carried out pursuant to such an unlawful policy constitute conversion. Contrary to the City's contention that Plaintiffs cannot show causation on a class-wide basis, causation is shown by the fact that all cars impounded solely for DWLS violations were necessarily impounded pursuant to an unlawful policy. Post hoc rationalizations that each of the impounds would have been reasonable under the circumstances does not save the City from summary judgment.

The Court DENIES the City's motion. The key issue in Plaintiffs' impound related claims is the nature of the City's policy and whether that policy was unlawful, not whether each impound for a class member's car was reasonable under the circumstances. Similarly, the key issue in Plaintiffs' due process post-impound hearing claim is the nature of the hearing that was available as a rule, not

1  whether each class member demanded a hearing in which to argue that the impound policy was

2  unlawful.   Both are issues that are appropriate for class treatment.

3  The clerk is directed to provide copies of this order to all counsel of record.

4  Dated: June 27, 2005

Marsha J. Pechman
United States District Court

ORDER - 11