1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
7                                    AT SEATTLE

8

9    MARION PRICE, et al.,

10                          Plaintiffs,                    No. C03-1365RSL

11   v.

12   CITY OF SEATTLE, et al.,                              ORDER ON THE CITY OF
                                                           SEATTLE'S MOTION TO
13                          Defendants.                    DECERTIFY THE CLASS

14

15          This matter comes before the Court on the City of Seattle's motion to decertify the class.

16   (Dkt. # 189).  The City seeks decertification of the class for the damages phase of this litigation,

17   arguing that Plaintiffs cannot adequately prove damages on a classwide basis and that determining

18   damages will turn on individual issues.  Having considered the papers and pleadings submitted by the

19   parties, the Court grants in part and denies in part the City's motion.[1]

20          The Court grants the City's motion to decertify the class as to Plaintiffs' claims for:  (1) loss

21   of use damages for class members who redeemed their vehicles after impound; and (2) the fair market

22   value of vehicles that were not redeemed but were sold at auction.  The Court denies the City's

23   motion to decertify the class as to Plaintiffs' claims for reimbursement of towing, storage, and

24

25

26          [1]  Although Plaintiffs have requested oral argument on this motion, the Court finds the motion
     suitable for disposition based on the parties' briefing and accompanying declarations and exhibits.

     ORDER - 1

administrative charges that class members paid to redeem their vehicles.  The reasons for the Court's order are set forth below.

**Background**

1.    Procedural History

Plaintiffs are challenging a City of Seattle policy that required police officers to impound vehicles operated by persons driving while their licenses were suspended (DWLS).  Judge Pechman of this Court issued a class certification order on May 4, 2004.[2]  However, the class definition has been modified since then.  The current definition of the class is as follows:

> All registered owners of motor vehicles impounded by the City from March 20, 2000 through December 27, 2002 where the "reason for hold/investigation" on the Vehicle Report form indicates that the sole reason for the impound was driving while a license is suspended or revoked, or if no reason is specified, where the sole impoundable charge listed on the Vehicle Report form is driving while a license is suspended or revoked.

Dkt. # 179 at 1-2.  A damages class was certified under Rule 23(b)(3), which requires a determination that: (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.[3]

In the class certification order, Judge Pechman found that common issues predominated and that no significant individual issues were apparent.  Dkt. # 47 at 5.  Judge Pechman did not accept the City's argument that individual issues regarding damages defeated commonality, finding that "the damages in this case can be determined on a formulaic basis."  Id. at 3.  Judge Pechman also found that the superiority requirement was met, noting that individual actions were unlikely, concentrating the claims into a single forum would be desirable, and that the class would be manageable.  Id. at 6.

On June 27, 2005, Judge Pechman granted Plaintiffs' motion for partial summary judgment on their state-law claim for conversion, a ruling that established the City's liability for this claim.  Dkt. #

---

[2]  Judge Pechman has since recused herself from this matter.

[3]  The Court also certified an injunctive class pursuant to Rule 23(b)(2).  However, Plaintiffs' claims for injunctive relief were later dismissed.  See Dkt. # 116.

ORDER - 2

152. All other claims have been dismissed, either by order of the Court or by stipulation of the parties. As a result, the only remaining issue in this case is the amount of damages that class members are entitled to receive for their conversion claims.

2.     Damages Sought by Plaintiffs

Plaintiffs seek three types of damages for class members, depending on whether the class members redeemed their vehicles from impound. For class members who redeemed their vehicles, Plaintiffs seek: (1) reimbursement of towing, storage, and administrative charges paid to redeem their vehicles; and (2) loss of use damages as measured by the per diem cost to rent replacement vehicles. For class members whose vehicles were auctioned following impound, Plaintiffs seek: (3) the fair market value of the class members' vehicles as of the date of impound. Plaintiffs disclaim any intent to seek loss of income damages for any class members. Plaintiffs have calculated that the average amount of damages for class members who redeemed their vehicles would be about $600, while the average damages for class members whose vehicles were auctioned would be about $2,500. Opp. Brief at 23.

3.     Size of the Class

Plaintiffs maintain that about 13,255 vehicles were impounded for DWLS violations during the class period. Plaintiffs assert that about 3,850 of those vehicles were scheduled for auction. However, Plaintiffs indicate that not all of the owners of these vehicles are members of the class, since the class only includes persons whose vehicles were solely impounded for DWLS violations. Plaintiffs state that they have not yet received the necessary information from the City to determine the exact number of class members.

Plaintiffs maintain that they have been able to obtain "usable, available electronic records" for about 12,100 vehicles. However, Plaintiffs state that "[t]here are some short temporal gaps in some of the databases, a small number of the individual records are unusable, and some of the individual records are incomplete." Opp. Brief at 3. As a result, Plaintiffs have electronic records for most, but not all, of the class members.

4.       Plaintiffs' Plan for Proving Damages

Plaintiffs propose to prove an aggregate amount of damages for the entire class at trial, with allocation to particular class members to be accomplished after trial through a claims procedure. Plaintiffs maintain that "any isolated individual questions can be addressed through challenges to particular claims or similar procedural devices following the class trial on damages."  Opp. Brief at 24.

**Analysis**

Fed. R. Civ. P. 23(c)(1)(C) provides that a class certification order may be altered or amended before final judgment.  A class may be decertified following a liability determination due to difficulties arising from individual damages issues.  See, e.g., Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004) ("Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues," including "decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages.").

On the record available during the class certification proceeding in 2004, Judge Pechman found that "the damages in this case can be determined on a formulaic basis." Dkt. # 47 at 3. However, a court "has the right to decertify the class following a determination of liability against the defendants if the plaintiffs are unable to develop a method of proving damages which will permit the trial to proceed in an efficient manner."  In re Sugar Indus. Antitrust Litig., 73 F.R.D. 322, 355 (E.D. Pa. 1976).  Because Plaintiffs are seeking three types of damages, the Court considers each category of damages separately to determine whether class decertification is warranted.

1.       Damages for Redemption Fees

First, Plaintiffs seek reimbursement of the towing, storage, and administrative charges paid by members of the class who redeemed their vehicles.  Plaintiffs maintain that "individualized electronic data exist for approximately 90% of the redeemed impounds."  Opp. Brief at 8.  However, Plaintiffs indicate that complete electronic data are not available for some members of the class.  Plaintiffs

propose that "for the relatively small group of impounds for which individual electronic data are missing, plaintiffs will extrapolate the aggregate amount of redemption fees . . . by using the average of these damage elements from the known records." Opp. Brief at 7-8. The City argues that it would be improper to use averages to measure redemption fees paid by class members for whom electronic records are unavailable, arguing that such a practice would result in overcompensation of some class members and undercompensation of others.

The Court finds that Plaintiffs have proposed an acceptable formulaic method for proving classwide damages for redemption fees. In essence, Plaintiffs propose to: (1) calculate the total redemption fees paid by class members for whom complete electronic data are available, which should be a relatively simple mathematical task; and (2) use the average redemption fees paid by such class members as proof of the amount of fees that were likely paid by the relatively small number of class members for whom complete electronic data are not available. After the jury determines an aggregate amount of damages for redemption fees, individual class members may be required to submit proof of claim forms through a claims administration process.

Under the circumstances, the Court finds that Plaintiffs have proposed a reasonable method of using known data for a large number of class members to determine the likely damages for the relatively modest number of class members for whom electronic data are unavailable. During the claims administration process, the City may object to individual awards to class members whose damages are based on the average redemption fees paid by other class members. If the City has records demonstrating that such an individual paid less in redemption fees than the "average" amount, that individual's claim can be adjusted downward. Such a process should be sufficient to address concerns regarding overcompensation of class members for whom electronic data are not available.[4]

_____

[4] The City also argues that "many of the storage and towing fees were paid by the defendant itself after hearings determined that the impound was improper." Reply at 11-12. Putting aside the fact that the City did not raise this argument until its reply brief, this issue does not require decertification. The City may offer such evidence at trial and argue for a reduction in the damage award. The City could also raise objections to individual awards in such cases during the claims administration process.

1   Defendants also suggest that Plaintiffs' proposed method of proving damages for redemption
2   fees is "unfounded" because some class members allegedly failed to obtain release of their vehicles in
3   a "timely fashion," leading to extended storage fees.  The Court does not regard this concern as a
4   sufficient reason to warrant decertification.  Assuming for the sake of this motion that class members
5   may be denied extended storage fees if they failed to act in a "timely fashion" to recover their
6   vehicles, the City may present evidence on this issue at trial and ask the jury to reduce damages for
7   redemption fees accordingly.

8   Therefore, the Court finds that Plaintiffs have proposed a manageable plan for adjudicating
9   class members' claims for reimbursement of redemption fees and that a class action remains the
10  superior method of resolving these claims.  Because the amount of such damages for individual class
11  members is relatively nominal, class members would have little interest in seeking such damages on an
12  individual basis.

13  2.   Loss of Use Damages

14  Plaintiffs also seek to recover "loss of use" damages for class members who redeemed their
15  vehicles from impound.  Plaintiffs propose to prove loss of use damages by demonstrating what class
16  members would have paid to rent comparably-sized vehicles while their vehicles were impounded.
17  According to Plaintiffs, impound records provide information regarding the make and model of each
18  vehicle, as well as the amount of time each vehicle was impounded.  Plaintiffs' experts have used this
19  information to calculate the daily rental rates for comparably-sized vehicles.  See Opp. Brief at 6.

20  The City argues that determining loss of use damages turns on individual issues and cannot be
21  proved on a classwide basis by simply offering evidence of what class members would have paid to
22  rent replacement vehicles while their cars were impounded.  In particular, the City notes that many
23  class members were legally unable to operate their vehicles because their drivers' licenses were
24  suspended.  The City also argues that Plaintiffs bear the burden of demonstrating the reasonableness
25  of the period of time for which each class member was deprived the use of his or her vehicle.

26

Both sides largely rely on the same cases to support their arguments regarding loss of use damages.  Citing <u>Straka Trucking, Inc. v. Estate of Peterson</u>, 98 Wn. App. 209 (1999), Plaintiffs argue that loss of use damages for temporary deprivation of a vehicle may be measured by the rental cost of a replacement vehicle.  The <u>Straka</u> court approvingly quoted a treatise on remedies for the proposition that "[l]oss of use claims are appropriate in the case of private chattels, such as the family car" and that loss of use may be measured by the "cost of renting a substitute chattel."  <u>Id.</u> at 211 (quoting Dan B. Dobbs, <u>Law of Remedies</u> § 5.15(1) at 875 (2d ed. 1993)).  However, as the City notes, the <u>Straka</u> court also held that the plaintiff "has the burden of proving the reasonableness of the period of time for which it claims loss of use."  <u>Id.</u> at 214.

Both sides also cite <u>Holmes v. Raffo</u>, 60 Wn.2d 421 (1962).  The <u>Holmes</u> court held that "[t]he rule with respect to loss of use of an automobile is that the owner may recover, as general damages, the use value of which he is deprived because of the defendant's wrongful act."  <u>Id.</u> at 429-30.  As Plaintiffs observe, the court held that a plaintiff could seek loss of use damages even if the plaintiff did not rent a substitute vehicle.  <u>Id.</u> at 431.  However, as the City notes, the court also indicated:

> [W]here, as here, a plaintiff has not rented a substitute automobile, he is nevertheless entitled to receive, as general damages in the event liability is established, such sum as will compensate him for his inconvenience.  Proof of what it reasonably would have cost to hire a substitute automobile is sufficient evidence to carry this item of damages to the jury, <u>but it is not the measure of such damages</u>.  It is relevant evidence in determining the general damages for inconvenience resulting from loss of use of an automobile.

<u>Id.</u> at 432 (emphasis added).

The City also points to <u>Steinman v. City of Seattle</u>, 16 Wn. App. 853 (1977).  In <u>Steinman</u>, the plaintiff sought damages for conversion after his tractor was impounded.  The <u>Steinman</u> court approved the following jury instruction offered by the trial court:

> If you find that either of the defendants have wrongfully taken plaintiff's equipment and deprived him of its use and that plaintiff was unable to obtain a replacement tractor because of his financial circumstances, and if you find that the defendants were made aware that consequential damages would commence at the time of the impound, you are justified in allowing plaintiff consequential damages represented by the loss of reasonable rental value of the equipment for a reasonable time.  Plaintiff must prove that he could have used his equipment during the time the equipment was under impound.  Any award of damages for loss

of rental cannot be based on speculation or conjecture, and it must be for a reasonable time and must bear some reasonable relation to the value of the property.

Id. at 856.

Taken together, these cases suggest that proving loss of use damages is not as simple as merely offering evidence of what it would have cost each class member to rent a substitute vehicle. As the City notes, the Straka decision provided that the plaintiff bears the "burden of proving the reasonableness of the period of time for which it claims loss of use." Straka, 98 Wn. App. at 214. Here, Plaintiffs offer no plan to prove the reasonableness of time for which they are claiming loss of use damages; instead, they make the conclusory assertion that "there is no basis for believing that any owner who redeemed her vehicle was unreasonably dilatory in doing so." Opp. Brief at 21.

The Steinman decision also suggests that a plaintiff seeking loss of use damages "must prove that he could have used his equipment during the time the equipment was under impound." Steinman, 16 Wn. App. at 856. Here, many class members were not legally entitled to operate their vehicles during the impoundment period because their driver's licenses were suspended. Plaintiffs seek to address this concern by arguing that owners with suspended licenses "may use the vehicle for transport by licensed family or friends, may loan it for money or favors, or even use it as collateral for financial transactions." Opp. Brief at 20. However, a finder of fact would have no basis to determine that every class member with a suspended license could have used their vehicles in such a manner while the vehicles were impounded.

Finally, the Holmes decision discusses the measurement of loss of use damages in cases where a plaintiff does not rent a substitute vehicle. In such cases, the Holmes court indicated that a plaintiff is entitled to "such sum as will compensate him for his inconvenience." Holmes, 60 Wn.2d at 431. The court indicated that "[p]roof of what it reasonably would have cost to hire a substitute automobile is sufficient evidence to carry this item of damages to the jury, but it is not the measure of such damages. It is relevant evidence in determining the general damages for inconvenience resulting from loss of use of an automobile." Id. at 432.

In view of this authority, the Court finds that Plaintiffs have not proposed an acceptable method of proving loss of use damages on a classwide basis.  The Court recognizes that the average claim for loss of use damages for each class member who redeemed his or her vehicle would be modest and that it would be inefficient for each class member to pursue such damages individually.  However, in a class that includes thousands of members, many of whom were not legally entitled to operate their vehicles, loss of use damages cannot be fairly determined on a classwide basis by simply aggregating the amount of money that each class member would have paid to rent comparably-sized vehicles during the impoundment period.  Instead, determining loss of use damages for class members would require consideration of individual issues and cannot reasonably be proved on a classwide, formulaic basis.  Therefore, the Court will decertify the class to the extent Plaintiffs seek loss of use damages for class members who redeemed their vehicles from impound.

3.      Fair Market Value of Auctioned Vehicles

For class members whose vehicles were auctioned following impound, Plaintiffs seek to recover the fair market value of the class members' vehicles as of the date of impound.  "[F]air market value has been generally defined as the value for which the property could have been sold in the course of a voluntary sale between a willing buyer and a willing seller, taking into account the use to which the property is adapted or could reasonably be adopted."  Merchant v. Peterson, 38 Wn. App. 855, 859 (1984).  The trier of fact must determine the value of the converted property.  Saddle Mountain Minerals, L.L.C. v. Joshi, 152 Wn.2d 242, 249 (2004).

The City argues that individual issues of damage valuation predominate and that Plaintiffs have not proposed an adequate method of proving such damages on a classwide basis.  The City notes that Plaintiffs will seek to prove the fair market value of auctioned vehicles by relying on the average values of vehicles of the same make, model, and year as published in guides by National Automobile Dealers Association (N.A.D.A.).  The City argues that Plaintiffs' method does not take into account individual factors that would affect the value of each auctioned vehicle, such as mileage, vehicle condition, and options.

1    In response, Plaintiffs acknowledge that "[a]rguably, more information about a particular

2 vehicle, like mileage, options, or condition, would allow a more precise calculation of damages."

3 Opp. Brief at 22.  However, Plaintiffs argue that the N.A.D.A. guides provide a reasonable estimation

4 of the value of the auctioned vehicles.  Plaintiffs maintain that precision in measuring damages is

5 "largely illusory given the unavailability of the auctioned vehicles in this case and the imprecise nature

6 of 'fair market value' in general."  Id.  Plaintiffs' expert Mark Olson offers the following opinions to

7 justify using the N.A.D.A. guides to determine the value of the auctioned vehicles on a classwide

8 basis:

9           The N.A.D.A. guides . . . allow upward and downward adjustments to particular vehicle
            values based on low or high mileage and the presence or absence of specific options and
10          accessories.  However, it is reasonable to assume that, on average, these factors would even
            out over the thousands of vehicles auctioned under the impoundment program. . . .  The value
11          of a particular used car obviously can vary depending on the overall physical condition of the
            car, including cleanliness, scratches, dents, and so forth.  On an average or aggregate basis,
12          this already is factored into the published N.A.D.A. values to some extent, because these
            values are based on multiple transactions that involve the same make, model, and year of
13          vehicle in different conditions.  Also, while the tow companies may maintain some information
            on the condition of some impounded vehicles, for example diagrams showing if there are any
14          exterior defects to the vehicle, the information is not precise, detailed, or maintained in a
            readily accessible format.  In the absence of precise and detailed information, it is reasonable
15          to assume that the universe of auctioned impounded vehicles will not differ significantly from
            the universe of vehicles underlying the N.A.D.A values.

16 Dkt. # 190, Ex. G at 5-6.

17    As Mr. Olson acknowledges, it obvious that the fair market value of a vehicle depends on

18 issues that are unique to the vehicle, including mileage and condition.  As a result, the fair market

19 value of each auctioned vehicle will turn on individual issues such as the mileage and condition of the

20 vehicle.  Although Mr. Olsen opines that it would be reasonable to "assume that the universe of

21 auctioned impounded vehicles will not differ significantly from the universe of vehicles underlying the

22 N.A.D.A. values," Plaintiffs do not point to concrete evidence to support such an assumption.

23    Under these circumstances, the Court finds that determining the fair market value of the

24 auctioned vehicles is not reasonably susceptible to proof on a classwide basis in the manner proposed

25 by Plaintiffs.  The finder of fact would have to assume that the fair market values of the auctioned

26 vehicles reasonably approximate the average value of vehicles of the same make, model, and year as

stated in the N.A.D.A. guides, without having any evidence regarding the condition or mileage of the actual vehicles.  Even in the class action context, "the proofs must be sufficiently reliable to determine the defendant's liability justly."  3 Alba Conte & Herbert B. Newberg, <u>Newberg on Class Actions</u> § 10.2 (4th ed. 2006).  Therefore, the Court will decertify the class to the extent that Plaintiffs seek damages for the fair market value of vehicles that were sold at auction.

The Court recognizes that it would be inefficient and somewhat burdensome to require class members to pursue individual actions if they wish to recover the fair market value of vehicles that were auctioned.  However, in light of the highly individualized nature of determining the fair market value of a vehicle, the Court would likely have to hold its own series of "mini-trials" to determine the fair market value of each auctioned vehicle or appoint a special master to oversee a similar process.  Little efficiency over individual actions would be gained by such a process.  In addition, class members whose vehicles were auctioned should have an interest in pursuing individual actions, given that Plaintiffs estimate that the auctioned vehicles had an average fair market value of approximately $2,500.  Litigating individual actions would also be less burdensome than in most cases because liability has been established, meaning that individual class members will only need to prove the fair market value of their vehicle.  The ability of class members to pursue such individual actions may be facilitated by sending notice to class members describing the procedure for filing a notice of claim with the City.  If individual class members and the City are unable to resolve the dispute after a notice of claim is filed, individual class members may bring suit in state court to seek damages.

4.    <u>Notice to Class Members</u>

Absent class members are entitled to receive notice of the provisions of this order, particularly with respect to its decertification provisions.  <u>See</u> <u>Culver v. City of Milwaukee</u>, 277 F.3d 908, 914-15 (7th Cir. 2002).  Class counsel is directed to prepare notice for the Court's approval within fourteen days of the date of this order.  Class notice should include specific instructions for filing individual claims for damages with the City, as well as information about the applicable statute of limitations.

**Conclusion**

1    For the foregoing reasons, the City's motion to decertify (Dkt. # 189) is GRANTED in part

2 and DENIED in part.  The Court grants the City's motion to decertify the class as to Plaintiffs' claims

3 for:  (1) loss of use damages for class members who redeemed their vehicles after impound; and (2)

4 the fair market value of vehicles that were not redeemed but were sold at auction.  The Court denies

5 the City's motion to decertify with respect to Plaintiffs' claims for reimbursement of towing, storage,

6 and administrative charges that class members paid to redeem their vehicles.  The Clerk shall send

7 copies of this order to all counsel of record.

8    Dated this 19th day of September, 2006.

9

10                                        _Robert S. Lasnik_

11                                        Robert S. Lasnik
                                          United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER - 12