THE HONORABLE ROBERT LASNIK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARION PRICE; RODRIGUE PAUL; HARRY DAVIS; DAVID L. WILLIAMS; and ALLEN R. NUNNERY, on behalf of themselves and the class they represent,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF SEATTLE, a municipal corporation and political subdivision of the State of Washington,<br><br>Defendants. | No. CV03-1365L<br><br>PLAINTIFFS' MEMORANDUM IN SUPPORT OF FINAL SETTLEMENT APPROVAL |

Plaintiffs submit this memorandum in support of final approval of the proposed settlement in this certified class action. The Court should approve the settlement because it is fair, adequate, and reasonable and in the best interests of the class. No class members have filed objections and there appears no other basis to question the Court's preliminary determination of reasonableness.

## I.   FACTUAL BACKGROUND

**A.   Reasonable Notice Has Been Provided To The Class.**

In accordance with the Court's preliminary approval order, 8,500 Notices of Proposed Settlement in the form approved by the Court were mailed to the last known valid

PLAINTIFFS' MEMORANDUM IN SUPPORT
OF FINAL SETTLEMENT APPROVAL - 1

SCHROETER, GOLDMARK & BENDER
500 Central Building • 810 Third Avenue • Seattle, WA  98104
(206) 622-8000

addresses of class members on or before May 15, 2007. Both English and Spanish versions of the claim form were included in all Notices. Where possible, counsel's staff has attempted to find current addresses and remail notice to those class members whose notices were returned as undeliverable with no forwarding address. This process has been forced to proceed on a non-automated basis, through matching of class member names and old addresses with new addresses acquired from the Lexis public records database, and has resulted in the remailing of approximately 500 notices.

Also in accordance with the Court's preliminary approval order, summary notice in the form approved by the Court was published in the two weeks following the Order in the Seattle Times and Seattle Post-Intelligencer (two issues each), The Skanner, and SEA Latino (in Spanish). Following suggestions and inquiries from class members and others, counsel also published notice in The Facts, a newspaper principally serving the African American community, Real Change, Northwest Asian Weekly, and The Voice, a free monthly newspaper distributed to Seattle Housing Authority residents.

Counsel also arranged to have notice posted at two community organizations, CAMP and LELO, that have provided counseling and relicensing services to DWLS drivers in the past. The notice and related information also were posted on class counsel's website, appearing in first position on a Google search for "Seattle Impound Class Action."

**B.     Response Of The Class.**

Class counsel has received no oral or written objections to the proposed settlement.

To date, class counsel has received approximately 160 claim forms, excluding claims for auctioned vehicles that have been redirected to the City of Seattle's claims manager. Class counsel's staff has responded to numerous additional telephone calls for

PLAINTIFFS' MEMORANDUM IN SUPPORT
OF FINAL SETTLEMENT APPROVAL - 2

assistance with the claim form (for example, identifying the date of impound), which staff is in the process of providing. Although counsel anticipates receiving additional claims on the basis of these calls and in advance of the August 31, 2007 deadline, it is virtually certain that the number of claims will represent only a fraction of the class and will not exhaust the settlement fund.

**C.  Additional Fees And Costs Incurred By Counsel**

Since filing its petition for fees and costs, class counsel has incurred additional costs of $182.09 in this case and recorded two additional hours of paralegal time. Counsel has spent spent 6.5 hours in preparation of these final approval papers. This does not include attorney time spent discussing class member inquiries or database management with paralegals, or time spent searching for current class member addresses and remailing notices, as described above. *See* Declaration of Adam J. Berger in Support of Final Settlement Approval ¶ 9 (filed herewith).

## II.  DISCUSSION

**A.  The Settlement Is Fair, Adequate And Reasonable.**

Rule 23(e) requires a reviewing court to determine whether the proposed settlement is fair, adequate and reasonable. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). In making this determination, the Court must balance several factors, including "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; … and the reaction of the class members to the proposed settlement." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

PLAINTIFFS' MEMORANDUM IN SUPPORT
OF FINAL SETTLEMENT APPROVAL - 3

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
(206) 622-8000

Plaintiffs discussed most of these factors in their Unopposed Motion for Preliminary Approval of Class Action Settlement. Plaintiffs will not repeat that full discussion here but will briefly reiterate some of the most significant points.

**1.    The Amount Offered In Settlement.**

As noted in plaintiffs' preliminary motion, the amount of the settlement fund is more than two-thirds of the best possible outcome in the case. At this point, it appears certain that all class members filing claims will receive full compensation. Under these circumstances, the amount offered supports the reasonableness of the settlement

**2.    The Risks, Delay, And Expense Of Further Litigation.**

The risks of continued litigation are discussed in the preliminary motion. Chief among those risks are:

> i.    The high likelihood of an appeal after judgment by the City, with its attendant delays;
>
> ii.   The risk of an adverse decision on appeal regarding either class certification or the Court's summary judgment ruling in favor of the plaintiffs on liability;
>
> iii.  The possibility of an adverse ruling by the Washington Supreme Court in a case against the Washington State Patrol based on the same legal theories.

These risks could eliminate altogether the possibility of any recovery for any class member. At a minimum, additional delay would reduce even further the number of class members to whom recovery could be distributed given the disconnected, highly transient nature of much of the class. Coupled with the fact that further litigation is extremely unlikely to result in any better outcome for the class, these considerations support approval of the settlement.

PLAINTIFFS' MEMORANDUM IN SUPPORT
OF FINAL SETTLEMENT APPROVAL - 4

**3.     Reaction of The Class Members.**

Individual and publication notice were provided as mandated in the Court's preliminary approval order. Counsel took several additional steps to reach out to class members, including publication in four other community-oriented newspapers likely to reach some class members, posting at community organizations, and attempts to update mailing addresses even absent unique identifiers like social security numbers. These efforts constitute the best notice practicable under the circumstances and meet or exceed the requirements of due process and Fed. R. Civ. P. 23(c).

As of the date of this filing, no class members have objected to the proposed settlement. No class members have objected to the incentive payments or attorney fee award allowed in the settlement and described in the class notice. The absence of adverse reaction from the class argues in favor of final approval.

**4.     The Distribution Scheme and *Cy Pres* Distribution.**

In anticipation of the potential for a residual from the settlement fund, plaintiffs and the City agreed to distribution of 15% of any residual to the Seattle Municipal Court's DWLS diversion program. The allocation of the residual, like the principal amount of the settlement fund, was the subject of extended, arms-length negotiation between the parties.

The federal courts have recognized the propriety of *cy pres* distributions of settlement funds as a means of dealing with unclaimed residuals or situations where distribution to individual class members is not feasible. *See*, *e.g.*, *Superior Beverage Co. v. Owens-Illinois, Inc.*, 827 F. Supp. 477, 478 (N.D. Ill. 1993) (approving distribution of residual to legal services and other charities; discussing cases and doctrine); *Jones v. National Distillers*, 56 F. Supp.2d 355 (S.D.N.Y. 1999) (same). Here, the proposed *cy pres*

PLAINTIFFS' MEMORANDUM IN SUPPORT
OF FINAL SETTLEMENT APPROVAL - 5

distribution will go to a program that benefits a class of individuals similarly situated to the settlement class, and likely having a fair degree of overlapping membership.

The fact that most of the residual will revert to the City must be viewed in light of three factors. First, the allocation of the residual was part and parcel of the overall negotiation of the settlement and was intertwined with agreement over the size of the settlement fund and other components of the settlement. As in any negotiation, the parties made trade-offs between the different elements of the settlement, such that a larger *cy pres* distribution would have been agreeable only with a smaller fund or other concessions by the plaintiff class. The agreed allocation is within the range of reasonable compromises and is fair in light of the risks of delay, expense, and ultimate non-recovery affecting the settlement as a whole.

Second, the courts have held that settlement fund residuals may revert to a defendant that did not act in bad faith even where the settlement contains a non-refundability clause. *See Wilson v. Southwest Airlines, Inc.*, 880 F.2d 807, 813-15 (5th Cir. 1989) (allowing partial reversion to defendant where defendant acted in good faith both before and during the litigation). As in *Wilson*, 880 F.2d at 815, there is evidence in this case that the City had a good faith belief that its impound policy was lawful under the amended state law prior to the Washington Supreme Court's decision in *All Around Underground*, 53 P.3d 60 (2002). The City offered a settlement fund capable of fully or reasonably compensating class members, and there is no evidence of inequitable conduct on the City's part either before or during this litigation that would disallow its negotiated reversionary interest in the residual funds.

PLAINTIFFS' MEMORANDUM IN SUPPORT
OF FINAL SETTLEMENT APPROVAL - 6

Third, the equities of *cy pres* distribution versus reversion are affected by the fact that the defendant is a municipal government rather than a private corporation. In theory, all or most of the City's budget is spent on matters that benefit the public interest and serve to promote the welfare of its citizens, including the resident class members. Although the City should be held liable to compensate individuals who are injured or wronged by City policies, a *cy pres* distribution of residual funds to some extent serves to divert money from one action or program benefiting the public weal to another with a narrower focus. This may be desirable to some extent, particularly where a *cy pres* distribution will help to rectify an injustice that was the cause of the suit. However, a greater reversionary interest should be acceptable where municipal defendants, by their nature, will put the reverted funds back to public use, than where reverted funds will simply be returned to a private defendant's coffers.

In short, this settlement provides full compensation to those class members making claims and a significant *cy pres* distribution to benefit individuals similarly situated, and therefore is fair, reasonable, and adequate and should be approved.

**5.     Benefits to Former Class Members.**

As noted in plaintiffs' motion for preliminary approval, this settlement has the effect of leaving in place the Court's summary judgment ruling holding the City liable for conversion for impounds under its mandatory impound program. Under *res judicata* principles, this ruling may be used by former class members whose vehicles were auctioned following impound and who now choose to pursue individual claims for damages. Plaintiffs do not know how many such claims have been filed, but are aware that the City has engaged an outside claims adjuster to help process those claims. Also,

although class counsel no longer represents those claimants, we have received numerous phone calls or misfiled claims from owners of auctioned vehicles. Counsel has responded to these communications by providing a copy of the November 2006 Notice of Decertification and directions on how to file a notice of claim with the City. If the settlement does not receive final approval, and the Court's summary judgment ruling is appealed, these claimants likely will lose, as a practical matter, any possibility of receiving compensation for their losses.

**B.     The Proposed Incentive And Settlement Payments To The Class Representatives Are Reasonable And Justified.**

The proposed settlement calls for payments of $7,500 each to the five named plaintiffs in settlement of their individual claims and in compensation for their time, effort, and risk in securing a recovery for the class. No class members have objected to these payments.

Numerous federal courts have approved additional compensation to class representatives under Fed. R. Civ. P. 23. For example, in *Huguley v. General Motors Corp.*, 128 F.R.D. 81, 85 (E.D. Mich. 1989), *aff'd*, 925 F.2d 1464 (6th Cir.), *cert. denied*, 502 U.S. 909 (1991), the court approved incentive payments to 88 named plaintiffs and witnesses because they "are entitled to more consideration than class members generally because of the onerous burden of litigation that they have borne." In *GNC Shareholder Litigation*, 668 F. Supp. 450, 451 (W.D. Pa. 1987), the court approved incentive awards of $3,000 to three named plaintiffs in addition to their recoveries as class members "to recognize efforts by the named plaintiffs to obtain recovery for class members." In *White v. National Football League*, 822 F. Supp. 1389, 1406 (D. Minn. 1993), *aff'd*, 41 F.3d 402 (8th Cir. 1994), *cert. denied*, 515 U.S. 1137 (1995), the court noted that courts "routinely

PLAINTIFFS' MEMORANDUM IN SUPPORT
OF FINAL SETTLEMENT APPROVAL - 8

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
(206) 622-8000

approve such awards for class representatives who expend special efforts that redound to the benefit of absent class members." *See also Golden v. Shulman*, Fed. Sec. L. Rep. (CCH) ¶ 94,060 (E.D.N.Y. 1988) ($5,000 additional award).

The courts have approved such incentive payments even where the monetary compensation for class members was relatively modest. In *Troncelliti v. Minolta Corp.*, 666 F. Supp. 750, 752 (D. Md. 1987), the named plaintiff received an additional $2,000, despite the fact that class members received refunds of only eight or fifteen dollars and the class suit was a copycat of price-fixing suits filed and settled by 36 states as *parens patriae*. Similarly, in *In re Domestic Air Transportation Antitrust Litigation*, 148 F.R.D. 297, 357-58 (N.D. Ga. 1993), 42 named plaintiffs received additional compensation of $2,500 to $5,000, while the class members received primarily discount coupons. *See also Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 709 (E.D. Mich. 1985) (original named plaintiffs awarded $2,000 each despite limited financial recovery for the class); *Luevano v. Campbell*, 93 F.R.D. 68, 89-90 (D.D.C. 1981) ($35,000 to four named plaintiffs in an employment discrimination suit despite the waiver of class-wide backpay where there was no evidence of improper collusion in the settlement and the relief obtained for the class was fair and adequate under the circumstances of the case as a whole).

The courts also have approved substantial incentive awards even when the named plaintiffs were corporations or businessmen that already possessed a substantial financial stake in the outcome of the litigation. *See Enterprise Energy Corp. v. Columbia Gas Transmission*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) ($50,000 awarded to each of six named corporate plaintiffs in gas pricing dispute); *In re Dun & Bradstreet Credit Svcs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990) (incentive awards of $35,000 to

PLAINTIFFS' MEMORANDUM IN SUPPORT
OF FINAL SETTLEMENT APPROVAL - 9

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA 98104
(206) 622-8000

$50,000 to five named corporate plaintiffs in fraud and antitrust action); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985) ($20,000 to two named lessee-dealer plaintiffs).

As one commentor has noted, "[i]ncentive awards … may be justified as essential to providing necessary incentive or encouragement to private actions to enforce certain public interests." Krislov, Scrutiny of the Bounty: Incentive Awards for Plaintiffs in Class Litigation, 78 Ill. B.J. 286, 290 (1990). The author concludes, "Incentive awards are thus legitimate bounties for producing certain benefits for a class and for society…. [T]hey are the reward for those who put themselves at risk on the class' behalf, sometimes when no one else knew, cared, or was courageous enough to assume the risk." *Id*.

In this case, the $7,500 payments represent settlement of the named plaintiffs' individual claims as well as incentive payments for their services to the class. These individual claims, by themselves, have values reaching or exceeding $7,500. *See* Berger Dec. ¶ 8. Four of the five named plaintiffs had vehicles auctioned following impound. *See* Declarations of Marion Price, Harry Davis, David Williams, and Allen Nunnery (filed January 23, 2004 with Plaintiffs' Motion for Class Certification). The fifth, Rodrigue Paul, lost use of his car for over three months while it was in impound, and the vehicle did not run properly once it was returned. *See* Declaration of Rodrigue Paul (filed January 23, 2004 with Plaintiffs' Motion for Class Certification). Mr. Paul and several of the other plaintiffs also suffered adverse job consequences as a result of being denied use of their vehicles and lost personal property that was in their cars at the time of impound. Berger Dec. ¶ 8. Under these circumstances, the $7,500 combined settlement and incentive awards are eminently reasonable.

PLAINTIFFS' MEMORANDUM IN SUPPORT
OF FINAL SETTLEMENT APPROVAL - 10

Even without these individual losses, the awards would be justified by the burdens and risks of litigation accepted by the named plaintiffs in order to obtain relief for the class. Each of the named plaintiffs devoted significant time and effort assisting counsel in investigating the claims against the City and evaluating settlement proposals. They answered lengthy interrogatories and produced documents for inspection by the City, and their driving and criminal records were subjected to close scrutiny by the City and its attorneys.  Berger Dec. ¶ 7.  Each plaintiff also endured a lengthy deposition by defense counsel, including detailed questioning on past criminal matters, household income and expenditures, family and living arrangements, and other matters of a personal nature.  *Id.*  Moreover, each plaintiff agreed to act as a class representative knowing that he might receive less compensation for his losses due to the formulaic limitations on damages available in class actions.  The named plaintiffs accepted these burdens and risks out of a sense of public duty, not any expectation of substantial personal financial gain.

For these reasons, the named plaintiffs are deserving of compensation for their claims and for their services to the class in the amount agreed to by the parties.

### III. CONCLUSION

For the reasons stated above and plaintiffs' earlier Motion in Support of Preliminary Approval, the Court should grant final approval of the proposed settlement.

DATED this **2nd** day of **July, 2007.**

/s/*Adam J. Berger*
SCHROETER GOLDMARK & BENDER
810 Third Avenue, Suite 500
Seattle, WA  98104
Phone:  (206) 622-8000
Fax:  (206) 682-2305
E-mail:  berger@sgb-law.com

PLAINTIFFS' MEMORANDUM IN SUPPORT
OF FINAL SETTLEMENT APPROVAL - 11

SCHROETER, GOLDMARK & BENDER
500 Central Building ● 810 Third Avenue ● Seattle, WA  98104
(206) 622-8000

**CERTIFICATE OF SERVICE**

I hereby certify that on July 2, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

>   Ted Buck
>   Stafford Frey Cooper
>   601 Union Street, #3100
>   Seattle, WA 98101-137

DATED this **2nd** day of **July, 2007.**

>   /s/*Adam J. Berger*
>   SCHROETER GOLDMARK & BENDER
>   810 Third Avenue, Suite 500
>   Seattle, WA 98104
>   Phone: (206) 622-8000
>   Fax: (206) 682-2305
>   E-mail: berger@sgb-law.com